**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **DANNY TREY CROSSLAND** | **CASE NO. 6:25-CV-00164 SEC P** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **SHERIFF'S OFFICE VERNON PARISH, ET AL** | **MAGISTRATE JUDGE LEBLANC** |

**REPORT AND RECOMMENDATION**

Before the court are the original and amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 by Danny Trey Crossland ("Crossland"), who is proceeding pro se and *in forma pauperis* in this matter. Docs. 1, 17. Crossland is incarcerated at the BB Rayburn Correctional Center in Angie, Louisiana, but his claims arise out of an incident that occurred while he was incarcerated at the Vernon Parish Sheriff's Office in Leesville, Louisiana. This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of this court. For the following reasons, it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim upon which relief may be granted.

## I. BACKGROUND

According to plaintiff's original complaint, in mid-February 2024, he was attacked at the Vernon Parish Sheriff's Office ("VPSO") by a fellow inmate, Phillip Aron Brister. Doc. 1-1, p. 2. Brister threw boiling water on him and hit him on the side of the head with a tablet. He sustained serious injuries and was treated at Our Lady of Lourdes Hospital for first-degree burns to his face, second-degree burns to his forearm, stomach and thigh, and third-degree burns to his chest, and at and Byrd Regional Hospital, where he received stitches in his head from being struck with the tablet.

Crossland states that when he was booked into VPSO in June 2023, he told the staff he was disabled and handicapped due to "neurological disease." *Id*. at p. 3. He argues that he should have been put into an ADA cell, as opposed to general population. Therefore, Crossland contends that the VPSO and Warden Brad Conn are responsible for his injuries, and he names them as defendants.

On March 23, 2026, in compliance with this Court's order (doc. 15), plaintiff filed an amended complaint clarifying certain details regarding his claims. Doc. 17. Specifically, he asserts that Vernon Parish Sheriff Sam Craft and Warden Conn are liable for failing to implement safety measures and policies to protect inmates from attacks. He makes claims of a "pattern of pervasive violence" due to insufficient policies for classifying inmates and housing them in a way that would mitigate conflict and that Sheriff Craft and Warden Conn are responsible for the acts and omissions of their employees. Doc. 17, pp. 1, 2. The failure to manage the population or supervise the inmates was "clear negligence" on the part of VPSO, Warden Conn and Sheriff Craft. *Id*. at p. 2. Finally, with respect to the incident itself, Crossland clarifies that the "attack was sudden and unprovoked." *Id*. at p. 2.

## II. LAW & ANALYSIS

### *A. Frivolity Review*

Crossland has been granted leave to proceed *in forma pauperis* in this matter. Accordingly, his complaint is subject to screening under 28 U.S.C. § 1915(e)(2), which provides for *sua sponte* dismissal of the complaint or any portion thereof if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v. Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to state a claim upon which relief may be granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (frivolity); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (failure to state a claim).

***B. Section 1983***

Title 42, United States Code, Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983. A plaintiff in a civil rights suit must show that the conduct complained of was committed by a person acting under color of state law. *See Lugar v. Edmondson Oil Co., Inc.*, 475 U.S. 922, 937 (1982).

***C. Failure to Protect and Classification of Inmates/Transfer***

Plaintiff complains that Sheriff Craft and Warden Conn failed to protect him from the attack by his fellow inmate. It is well settled that the Eighth Amendment's proscription against cruel and unusual punishment requires prison officials to protect inmates from violent attacks by other inmates. *Farmer v. Brennan*, 114 S. Ct. 1970, 1976 (1994). However, not every injury suffered by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety. *Id*. at 1977. In order for prison officials to be held liable under the Eighth Amendment for failure to protect, a prisoner must prove that the official

knew of and disregarded an excessive risk to the inmate's safety; was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and also drew the inference; and failed to take reasonable remedial action. *Id*. at 1981-83. "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment." *Id*. at 1979. "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Alton v. Tex. A & M Univ*., 168 F.3d 196, 201 (5th Cir. 1999). To reach the level of deliberate indifference, official conduct must be "wanton," which is defined to mean "reckless." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

Under the "subjective deliberate indifference" standard discussed in *Farmer*, a prison official cannot be liable for failing to protect an inmate unless the official "knows of and disregards an excessive risk to inmate health or safety." To prevail on such claims, a civil rights plaintiff must allege and ultimately establish that the defendant officials: (1) were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and (2) that they actually drew the inference. *Farmer*, 511 U.S. at 837.

The legal conclusion of deliberate indifference must rest on facts clearly evincing "wanton" actions on the part of defendants. *See Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). In *Smith v. Wade*, 461 U.S. 30, 39 n. 8 (1983), the Court approved the following definition of wanton:

> Wanton means reckless-without regard to the rights of others ... Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure. 30 American and English Encyclopedia of Law 2-4 (2d ed. 905) (footnotes omitted).

Crossland has not alleged deliberate indifference to his safety. He has not alleged that he had been threatened prior or that he had any information to suggest that anyone at VPSO was aware that he would be attacked. In fact, to the contrary, Crossland specifically states that the attack on him was "sudden and unprovoked." Doc. 17, p. 2. Further, his amended complaint makes a claim of "clear negligence by VPSO, Brad Conn & Sam Craft, period." *Id*. at p. 2. Therefore, not only does the complaint explicitly limit itself to negligence, but its underlying factual allegations also fail to rise to deliberate indifference.

Moreover, any complaints that there were "insufficient policies for classifying inmates and housing them in a way to mitigate conflict" are without merit. The classification of inmates is an administrative function of the prison. *See Jones v. Diamond,* 636 F.2d 1364, 1376 (5th Cir. 1981). Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. *Bell v. Wolfish*, 441 U.S. 520; *Smith v. Bingham*, 914 F.2d 740, 742 (5th Cir.1990). "Inmates have a federal right to due process at prison classification ... only if state law contains Substantive predicates limiting the prison administrators' discretion to classify, assign, and punish inmates." *Ricker v. Leapley*, 25 F.3d 1406, 1409 (8th Cir.1994); *accord Woods v. Edwards*, 51 F.3d 577, 582 (5th Cir.1995) (citing *Hewitt v. Helms*, 459 U.S. 460, 469-70 (1983)). "Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law." *Woods*, 51 F.3d at 581-82 (quotation omitted).

"Inmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." *Whitley v. Hunt,* 158 F.3d 882, 889 (5th Cir.1998) (citations omitted), *abrogated on*

*other grounds by Booth v. Churner,* 532 U.S. 731, 735 (2001); *accord Jones v. Roach*, 196 F. App'x 287, 2006 WL 2474746, at *1 (5th Cir. 2006); *Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir. 2003).

***C. American with Disabilities Claim***

In his original complaint, Crossland contends he was entitled to an Americans with Disabilities Act ("ADA") compliant cell. He states, "Since I'm disabled, I should have been put into that [ADA] cell but I wasn't. I was put into general population. While in general population, with non disabled inmates, I was attacked and injured." Doc. 1-1. His amended complaint makes no mention of the ADA. Doc. 17. However, to the extent Crossland alleges a claim under the ADA, that claim fails.

Title II of the ADA, which applies to public entities such as VPSO, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Title II imposes an obligation on public entities to make reasonable accommodations or modifications for disabled persons, including prisoners." *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014) (citations omitted). To state a claim under Title II of the ADA, a plaintiff must demonstrate: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (citing *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004)). A qualifying disability is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

First, although Crossland avers that he suffers from a "neurological disease," he has not alleged any facts showing that these conditions render him disabled within the meaning of the ADA. "It is well established that [m]erely having an impairment . . . does not make one disabled for purposes of the ADA." *Hale v. King,* 642 F.3d 492, 501 (5th Cir. 2011) (internal quotation marks omitted). Absent pleading facts showing how his claimed impairments substantially limit the performance of a major life activity, Crossland fails to state a claim for relief. *See id.; Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998) (explaining that PTSD, standing alone, "is not necessarily a disability contemplated by the ADA" and that "[t]he statute requires an impairment that substantially limits one or more of the major life activities"); *Willis v. Catahoula Corr. Ctr.*, No. 09-CV-1510, 2010 U.S. Dist. LEXIS 67218, 2010 WL 2710405, at *4 (W.D. La. May 14, 2010) ("To obtain relief under the ADA, a plaintiff must demonstrate that his condition significantly impairs a major life activity, and plaintiff has made no such demonstration.").

More significantly, Crossland has not pleaded facts indicating that defendants intentionally discriminated against him based on any qualifying disability. Crossland asserts that defendants denied him medical accommodations, i.e., an ADA cell. "The ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners." *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) (internal quotation marks omitted); *see Whetstone v. Hall*, NO. 4:17-158-JMV, 2018 U.S. Dist. LEXIS 10194, 2018 WL 522778, at *2 (N.D. Miss. Jan. 23, 2018) (citing *Bryant v. Madigan*, 84 F.3 d 246, 249 (7th Cir. 1996)) ("Neither [the ADA or RA] covers the mere absence or inadequacy of medical treatment for a prisoner."). With respect to Crossland's allegation that defendants denied him certain housing, he does not plead facts showing that such decisions had any connection to his alleged disabilities, or that defendants intentionally treated him differently because of a disability. *See, e.g., Back v. Tex. Dep't of Criminal Justice*

*Corr. Inst. Div.*, 716 F. App'x 255, 258 (5th Cir. 2017) (affirming dismissal of prisoner's ADA claim where he did not allege defendant intentionally discriminated against him due to his disability); *Hay*, 470 F. App'x at 418 (affirming dismissal of prisoner's ADA and RA claims where he "[did] not allege, much less explain, how his alleged disabilities made it more difficult for him to access the benefits of TDCJ's services [i.e., dentures,] or gave him less meaningful access to those services"). Without specific facts supporting the claim, i.e., facts showing that the denial of a service was *because of* his alleged disabilities, Crossland fails to establish the third element of an ADA claim—that defendants denied him a service with subjective intent to discriminate based on his alleged disabilities. *See, e.g., Bruce v. Little*, 568 F. App'x 283, 286 (5th Cir. 2014) (affirming district court's dismissal of prisoner's ADA claim where prisoner "failed to allege any facts supporting an ADA claim"); *Brigham v. Tex. Dep't of Criminal Justice*, Civil Action No. 1:15-CV-440, 2016 U.S. Dist. LEXIS 135674, 2016 WL 5719698, at *7 (E.D. Tex. Aug. 29, 2016) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)) (dismissing prisoner's ADA claim because he had not pleaded facts establishing any of elements and the court should not "'strain to find inferences favorable to plaintiff' or 'accept conclusory allegations, unwarranted deductions, or legal conclusions'").

## III. CONCLUSION

Therefore,

**IT IS RECOMMENDED** that Crossland's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

**IT IS FURTHER RECOMMENDED** that his motion to appoint counsel (doc. 18) be **DENIED** as **MOOT**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED in chambers this 8th day of September, 2026.

THOMAS P. LEBLANC
UNITED STATES MAGISTRATE JUDGE